MATTER OF FONG AND WONG

In Visa Petition Proceedings

A-14163404
A-14163402

*Decided by Board February 16, 1967*

A civil marriage ceremony contracted pursuant to the Hong Kong Marriage Ordinance, notwithstanding it was contracted under assumed names, is valid for immigration purposes where there was no marriage fraud involved, even though an assumed name was originally adopted by one of the parties to deceive U.S. immigration authorities.

ON BEHALF OF PETITIONER: Boyd H. Reynolds, Esquire
257 South Spring Street
Los Angeles, Calif. 90012
(Brief filed)

The cases come forward on appeal from the order of the District Director, Los Angeles District, dated October 25, 1966 revoking the visa petitions previously approved by the Service on December 10, 1964 on the ground that the petitioner has failed to establish that a valid legal relationship exists between the petitioner and his alleged wife and, in view of such failing, the petitioner has failed to establish that the minor beneficiary is his legitimate daughter; that the civil marriage ceremony performed on September 12, 1955 is considered null and void pursuant to Hong Kong Marriage Ordinance, Chapter 181, Article 28 which relates in part to marriages performed in which the parties knowingly and wilfully acquiesce in its celebration under a false name.

The petitioner, a native and citizen of China, 57 years old, who was admitted for lawful permanent residence on March 27, 1964 under section 249 of the Immigration and Nationality Act, seeks to classify the status of the beneficiaries as his wife and daughter, respectively. The adult female beneficiary is a native and citizen of China, born CR 22-9-19 (November 6, 1933). The minor female beneficiary is a native and citizen of Hong Kong, B.C.C., born June 8, 1956. The

petitioner and the adult beneficiary were married on September 12, 1955 at Hong Kong.

The certificate of marriage issued pursuant to Hong Kong Marriage Ordinance (Cap. 181) sections 21 and 22, reveals that the petitioner was married under the assumed name of Cheng Tang Young and his wife was married under the assumed name of Lee Young Ho. The birth certificate of the daughter shows her birth was registered as Young, King Sau.

A communication from the Department of State dated January 24, 1966 sets forth the provisions of the Hong Kong Marriage Ordinance, Chapter 181, Article 28 (2) which provides in pertinent part that a marriage shall be null and void if both parties knowingly and wilfully acquiesce in its celebration under a false name. The communication states that under the Hong Kong Marriage Ordinance, Article 28, a marriage ceremony performed with either of the parties to such a marriage under a false name is considered null and void. The communication further states that she and the petitioner also were married according to Chinese custom on the same day as the civil ceremony before the Hong Kong Registrar; however, no documentation of this second ceremony is presently available nor did either the petitioner or the principal applicant mention it until the validity of their civil ceremony became questionable. It is further set forth that the false identity of Le Young Ho was assumed by the principal applicant in a fraudulent passport application at the Hong Kong office filed March 10, 1952.

A communication dated August 3, 1966 from the British Registrar General, Hong Kong is to the effect that it is not possible for the Registrar of Marriages to give a ruling or decision that any particular marriage under the Hong Kong Marriage is null and void but that such a decision would be left to a court of law. Nevertheless, the Registrar General conferred with one of the Crown Counsel in the Legal Department and it was agreed on the information to hand, the parties appeared to have knowingly married each other under the Hong Kong Marriage Ordinance under false names, and it would appear that such marriage was null and void by virtue of section 28(2) of the Hong Kong Marriage Ordinance, Cap. 181. The communication stresses that this is a personal opinion only. It is clear that this letter from the Registrar General may be disregarded as purely supererogatory.

A sworn statement was taken from the petitioner on June 20, 1966. He admitted that both he and his wife assumed false identities when they were civilly married. However, he stated that he considered the celebration of their marriage later in the afternoon at a restaurant a celebration of their marriage according to the Chinese family cus-

tom at home; that according to the Chinese way the wedding party to be held in the village generally ought to be recognized as a complete wedding ceremony and bind the man and woman as husband and wife; that the marriage conducted at the Yen King Restaurant was in and of itself a complete marriage ceremony as followed according to old Chinese custom and recognized as such in the Chinese community.

The file also contains a sworn statement of the adult beneficiary executed before an immigration officer at Hong Kong on September 9, 1966 in which the affiant admitted that she used the name Lee Young Ho to conceal her identity because her family was in trouble with the Communists and that after her arrival in Hong Kong in 1952 she continued to use this name. She used this name when she married the petitioner who was using the name Cheng Tang Young. When their child, Wong King Sau, was born on June 8, 1956 her husband and she used their paper name in registering the child's birth. Her husband used the assumed name because he had been helped to go to the United States by friends under that name and at the time they were married on September 12, 1955, and when the birth of their child was registered, she knew her husband's correct name and he knew the wife's correct name. Following the wedding ceremony, they had a dinner party at Ying King Restaurant, Hong Kong. She stated that she did not consider the wedding feast at the Ying King Restaurant a proper wedding ceremony. However, because they were married before the Marriage Registrar and she had lived with her husband and had a child by him, she knew they were married and he is her husband. She did not know that being married before the Marriage Registrar under a false name was wrong and she did not know that they were breaking the law. However, she feels that she is married to her husband.

In connection with his brief on appeal, counsel submitted a letter from a Hong Kong firm of solicitors to the effect that section 28 of the Marriage Ordinance of Hong Kong, Cap. 181, is best explained on page 778 Halsbury's Laws of England, Vol. 19 which reads:

If a party is described by a false name and the banns are, in consequence, incorrectly published, the marriage is valid if the wrong name has been given by mistake, *or because the name given has been assumed and is generally accredited,* (Dancer v. Dancer 1948 (2) page 731 All England Report) or without any intention of concealing identity (Chipchase v. Chipchase 1939 (3) page 895 All England Report) and even if the false name has been given fraudulently, the marriage is nevertheless valid if one party marries without the knowledge of the falsity.

The burden of proof of establishing eligibility under the immigration laws rests upon the petitioner. It is believed that insufficient evidence has been presented to establish a valid Chinese custom mar-

riage. The issue of the validity of the marriage will be decided upon the basis of the marriage under the Hong Kong Ordinance.

In order to assist in resolving the question of the validity of the marriage and the legitimacy of the child, information was requested from the Library of Congress.[1] Section 7 and 22 of the Marriage Act (1823) of England are substantially the same as section 28(2) of the Hong Kong Ordinance in regard to the use of assumed names in marriage. The former provides that a marriage shall be "null and void to all intents and purposes whatsoever" if the parties knowingly and willfully intermarry without due publications of banns, prior to which "the parties must cause to be delivered to the parson their true Christian names and surnames." Section 28(2), however, provides that a marriage shall be null and void if both parties knowingly and willfully acquiesce in its celebration under a false name. A line of cases laid down the test (1) whether or not the assumed names were used for fraudulent purposes and (2) whether or not both parties were cognizant of the fraud and knowingly and willfully entered into the marriage without due publication.[2]

However, in another series of cases the court upheld the validity of marriages celebrated under assumed names where there was no element of fraud.[3] The *Dancer* case was distinguished from the *Chipchase* case because in the former the name which had been assumed by her mother had been used for 14 years; when the daughter discovered her true name she revealed this to her intended husband and also to the vicar who advised her to use the assumed name, for to do otherwise would only mislead the public. In the *Chipchase* case it was found that the party had given her maiden name not because she was known by that name and to give another name would be misleading, but because it served to conceal the fact that she was still married and this fact of concealment of the true situation was considered an infraction of the statute.

In the instant case the husband had been using his assumed name since 1929 and the wife had been using her assumed name since 1953. The husband confessed his assumed name and identity in June 1963 and his status was adjusted for immigration purposes. The husband had used an assumed name to make a false claim to United States citizenship. The wife had used an assumed name since 1953 because

---

[1] *Marriage Under Assumed Names in Hong Kong* prepared by Mrs. Ivy Leng-eng Chua of the Far Eastern Law Division. See Appendix.

[2] *Frankland v. Nicholson*, (1805) 3 M. & S. 259; *Tooth v. Barrow*, (1854) 1 Ecc. & Ad. 371; *Small v. Small*, (1923) 67 Sol. Jo. 277; *Wormald v. Wormald*, (1868) 19T. 93

[3] *R. v. Billinghurst*, (1814) 3 M. & S. 250; *Chipchase v. Chipchase*, (1939) 3 All E.R. 560; *Dancer v. Dancer*, (1948) All E.R. 731.

of trouble with the Communists. They were both generally known under their assumed names and the use of another name would be misleading. The cases under section 7 and 22 of the Marriage Act (1823) of England show that use of an assumed name per se does not invalidate a marriage celebrated under that name. Rather, the judges have considered all the relevant factors and all the circumstances surrounding the marriage.

In the case under consideration, the wife had used her assumed name since her arrival in Hong Kong in 1953 until her marriage in 1955 and she could not have been known in Hong Kong by any other name. No fraud was involved. Therefore under the authorities, the marriage must be deemed valid. The child, who did not participate in the fraud, and to whom fraud could not be imputed, must be held to be legitimate.

**ORDER:** It is ordered that the appeals be sustained and that the visa petitions be approved for immediate relative status.

## APPENDIX

### Marriage Under Assumed Names in Hong Kong

When the British Colony of Hong Kong was established, the whole of English law existing at that time was imported into the colony, subject to its application to local conditions. Later many of the ordinances enacted by the colonial legislature were also patterned along the lines of their British counterparts so that British judicial pronouncements have enjoyed authoritative status in the local courts. In the area of domestic relations, this has been true.

Sections 7 and 22 of the Marriage Act (1823) of England breathe substantially the same spirit as section 28(2) of the H.K. Ordinance in regard to the use of assumed names in marriage. The former provides in clear terms that a marriage shall be "null and void to all intents and purposes whatsoever" if the parties knowingly and wilfully intermarry without due publications of banns, prior to which "the parties must cause to be delivered to the parson their true Christian names and surnames". Section 28(2), however, provides that a marriage shall be null and void if both parties knowingly and wilfully acquiesce in its celebration under a false name.

On the interpretation of the English statute, the cases go both ways. But each case can be distinguished and each stands on its own facts. The judges have been seen to give maximum deference to the particular merits of each case in point.

In an earlier case, *Frankland* v. *Nicholson* (1805) 3 M. & S. 259, Sir William Scott laid down the general rule regarding acquired names in a marriage contract. The example was given that the publication that A and B were to be married, while in actuality it was C and D, was a nullity in itself. However, he added that there may be cases where names acquired by general use and habit may be taken by repute as the true names of the parties.

In 1847 sections 7 and 22 were subjected to an interpretation in the case of *Orme* v. *Holloway*, 27 Digest 47, 259, where the tests laid down were 1) whether or not asumed names were used for fraudulent purposes and 2) whether or not both parties were cognizant of the fraud and knowingly and wilfully entered into the marriage without due publication.

In *Tooth* v. *Barrow*, (1854) 1 Ecc. & Ad. 371, the Lord Justices applied the above tests and held the marriage null and void under section 22 for want of publication. Here the illegitimate daughter of a woman who had lost her original name and had acquired another was married under her original name, not as being the daughter of said mother, but of the mother's brother who represented himself as her father. It was held under the circumstances, which were surrounded with fraud, that both parties were cognizant of the fraud and consequently the marriage was null and void.

In *Small* v. *Small*, (1923) 67 Sol. Jo. 277, the facts revealed that the husband was a deserter from the Royal Field Artillery and enlisted in a different regiment under another name. In those circumstances, the judges felt that concealment of his real name during his marriage might well have arisen from the fear of arrest. The marriage was accordingly void.

Again in *Wormald* v. *Wormald*, (1868) 19 L. T. 93, a nullity decree was granted under S. 22 that there was fraud and cognizance thereof on the part of both parties. Here the 15 year old daughter of a banker married her father's butler. They had given a false name for her to the parson for publication. But during the marriage ceremony when the clergyman called her name as falsely given, she thereupon gave her true name and it was so entered by the clergyman. The suit was filed by the wife's father on the ground of undue publication. The Court found that both parties were cognizant of the fraud and had in fact intended a clandestine marriage.

In another series of cases the Court upheld the validity of marriages celebrated under assumed names where there was no element of fraud. Thus in *R.* v. *Billinghurst*, (1814) 3 M. & S. 250, a marriage was celebrated by X whose real name was A. The Court found that X had

been used as his name ever since he arrived at the parish three years prior to his marriage and he had been known there only by that assumed name. It found that there was no fraud in this particular case.

In 1939 *Chipchase* v. *Chipchase*, (1939) 3 All E.R. 560, was decided on the basis of the above precedent which was subsequently followed in *Dancer v. Dancer*, (1948) All E. R. 731, also.

In *Chipchase* v. *Chipchase* the question arose of whether the marriage was null and void because, with the knowledge of the parties, the wife had given a wrong name during the publication of the banns. She gave her maiden name although she had been married and she also stated that she was a widow. The learned justices found that as a matter of fact there was no evidence that her former husband was dead, although she had not heard from him for more than seven years. They found that she had given her maiden name, not because she was known by that name and to give another would be misleading, but because it served to conceal the fact that she was still married. This fact of concealment of the true situation was considered an infraction of the statute.

The facts in *Dancer* v. *Dancer* can be distinguished from those of the above case. Here the wife, the daughter of Mr. and Mrs. Knight, assumed the name of Roberts when she was three years old. At that time she and her mother began to live with Mr. Roberts and continued to do so for 14 years until he died. She had been brought up as the daughter of Mr. and Mrs. Roberts and she had used that name in all her dealings, even after she had discovered the truth when she was 16 years old. She revealed this to her intended husband and also to the vicar who advised her to use the name of Roberts, for to do otherwise would only mislead the public.

The Court found that she had consented to the use of the name Roberts not with fraudulent intention or to conceal any fact, but rather in order to avoid any concealment. However, in the *Chipchase* case, the wife had used her maiden name to conceal her true identity and the fact that she was still married.

The above cases show that under sections 7 and 22 of the Act, use of an assumed name per se does not invalidate a marriage celebrated under that name. Rather, the judges have considered all the relevant factors and all the circumstances surrounding the marriage.

In the case before us, the parties were married in Hong Kong under assumed names in 1955. The husband had used an assumed name in 1929 under a false claim to United States citizenship. It must be assumed that from 1929 until 1955 when he married, he had used that assumed name and hence had become generally known by that name since.

96

In *Dancer v. Dancer* the assumed name used at the time of the marriage had been one by which the wife had been known and accredited so that to do otherwise, *i.e.* use her original name, would only be misleading. Thus, if the petitioner had been using his assumed name throughout 1929–1955, but had resorted to his original name in 1955 on the occasion of his marriage, this would have been misleading and would have amounted to concealment of identity under the *Chipchase* ruling. Here the Court had shown that the use of the wife's original maiden name (which had presumably fallen into misuse) in her second marriage amounted to concealment of identity with fraudulent intent.

While the assumption of another name for immigration purposes may be quite irrelevant to such assumption in a subsequent marriage situation, the case might fall within *Small v. Small*. Here the husband had used an assumed name initially in order to conceal his identity as a deserter and hence to avoid arrest, so that a continued use of that assumed name in marriage was necessary to conceal his true identity. It seems that the petitioner in the present case had used an assumed name to make a false claim to United States citizenship. Had he committed an offense to which he must cover up for by the continued use of his assumed name? It is suggested that *Small v. Small* can be distinguished from the present case. The petitioner to date had confessed his fraud and the situation had been properly rectified and his status adjusted to that of permanent resident. The offences committed in both cases perhaps stand on a difference of degree as well as kind. It is suggested that the adjustment of his status operates retroactively to rectify the original fraud. The question then becomes one of whether or not his assumed name was used for the purpose of concealing his identity at the time of the marriage. If for 26 years he had been known by that assumed name, then it could be said that he had acquired a prescriptive right to it. The same could be said of *Dancer v. Dancer* where through long usage and accreditation an assumed name can validly be used in a marriage, for to do otherwise would only result in concealment of identity to mislead the public.

Concerning the case of the petitioner's wife, she had used a name which she assumed in 1953 when she left the Chinese mainland "because of trouble with the Communists". If since then she had used her assumed name and used it again in her marriage to the petitioner in 1955, then from 1953–1955 during her period of residence in Hong Kong, she must have been known by that name. If so, on an application of the above authorities, it would seem that a reversal to her original name during marriage would only result in concealment of her identity. Thus in *R. v. Billinghurst*, the husband's assumed name was held to be sufficient to validate his marriage because in that parish

97

he had not been known by any other name since he had first joined the parish three years prior to his marriage. Likewise, if the petitioner's wife had used her assumed name since her arrival in Hong Kong in 1953 until her marriage in 1955, she could not have been known by any other name.

If the application of the above authorities is correct, then the marriage must be held valid and accordingly, the child legitimate.